UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America | Criminal No. 3:09cr207 (JBA) |
| *v.* | |
| Douglas Perlitz | July 14, 2010 |

RULING AND ORDER DISMISSING INDICTMENT FOR IMPROPER VENUE

On April 21, 2010, a grand jury returned a Second Superseding Indictment against Defendant Douglas Perlitz, charging him with having "traveled in foreign commerce from the United States to Haiti" with the purpose of engaging in, and thereafter actually engaging in, "illicit sexual conduct . . . with other persons under 18 years of age," in violation of § 2423(b) and § 2423(c) of Title 18 of the United States Code. Specifically, Perlitz is charged with traveling to Haiti for the purpose of, and then successfully, leveraging his power and resources to coerce young street children in Haiti to engage in sex acts with him, constituting the sex–tourism crimes described in § 2423(b) and § 2423(c). Perlitz has moved to dismiss this Indictment, arguing that his prosecution under it violates the United States Constitution for three reasons: (1) Congress exceeded its power under the Commerce Clause when it enacted the statutes under which he is charged; (2) the Indictment "fails to allege necessary elements of the crimes in question," in violation of the Fifth and Sixth Amendments; and (3) prosecution in Connecticut would violate both Article III and the Sixth Amendment because the Indictment fails to allege that he committed the crimes in this State, and therefore does not support venue here. This Ruling and Order addresses only the issue of venue.

The Constitution requires the Government to prosecute crimes in the places in which they were committed.  The Defendant asserts that no conduct essential to any element of the crimes charged took place in Connecticut.  The Government contends that because Perlitz lived in Connecticut, drove from Connecticut to JFK, bought his tickets using money raised in Connecticut, and booked his travel from Connecticut, he committed acts in Connecticut that were essential to the crimes.  For the reasons that follow, the Court concludes that the Indictment charging Perlitz with travel in foreign commerce and illicit sexual conduct fails to allege criminal conduct to have taken place in Connecticut; instead, the Connecticut–based conduct alleged in the Indictment is only non–criminal conduct in preparation for, and prior to, the criminal conduct charged.  The Government's prosecution of Perlitz in this State would therefore violate the Constitution's requirement that a criminal prosecution occur "in the State where the said Crimes shall have been committed."  U.S. Const. amend. VI; *see also* U.S. Const. art. III, § 2, cl. 3.  Accordingly, the Indictment will be dismissed for improper venue.[1]  This dismissal for improper venue does not prohibit the Government from seeking an indictment against Perlitz in judicial district(s) in which venue would be proper, that is, "in the State[s] where the said Crimes shall have been committed."

I.      Principles of Law

As the Supreme Court has observed a number of times,

Proper venue in criminal proceedings was a matter of concern to the Nation's founders. . . . The Constitution twice safeguards the defendant's venue right: Article

---

[1] The Court will not address the issue of the constitutionality of § 2423(b) and § 2423(c), or the question whether the Indictment is unconstitutionally vague.

> III, § 2, cl. 3, instructs that "Trial of all Crimes . . . shall be held in the State where the
> said Crimes shall have been committed"; the Sixth Amendment calls for trial "by an
> impartial jury of the State and district wherein the crime shall have been committed."

*United States v. Cabrales*, 524 U.S. 1, 6 (1998); *accord United States v. Rodriguez–Moreno*, 526 U.S.

275, 278–79 (1999); *see also Skilling v. United States*, No. 08–1394, 2010 WL 2518587, *13 (June 24,

2010).  These constitutional commands, which geographically limit where a criminal trial can be

held, are "echoed by Rule 18 of the Federal Rules of Criminal Procedure," *Rodriguez–Moreno*, 526

U.S. at 278–79, which provides that "[u]nless a statute or these rules permit otherwise, the

government must prosecute an offense in a district where the offense was committed," Fed. R. Crim.

P. 18.  Thus, under the Constitution and Rule 18, "[t]he proper forum for a criminal prosecution is

the district in which the crime was committed."  *United States v. Odunaike*, 273 F. App'x 52, 60 (2d

Cir. 2008); *accord United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005).  "Venue is proper only

where the acts constituting the offense—the crime's 'essential conduct elements'—took place."

*Ramirez*, 420 F.3d at 138 (quoting *Rodriguez–Moreno*, 526 U.S. at 280).  It is the Government's

burden to "prov[e] that venue is proper."  *Id.* at 139; *United States v. Rommy*, 506 F.3d 108, 118–19

(2d Cir. 2007); *United States v. Ohle*, 678 F. Supp. 2d 215, 231–32 (S.D.N.Y. 2010); *United States v.*

*Motz*, 652 F. Supp. 2d 284, 290 (E.D.N.Y. 2009).

Where, as here, the "federal statute defining an offense does not specify how to determine

the location where the crime was committed, 'the *locus delicti* must be determined from the nature

of the crime alleged and the location of the act or acts constituting it.'"[2]  *Ramirez*, 420 F.3d at 138

---

[2] The term "*locus delicti*" means "[t]he place where an offense was committed."  *See* Black's
Law Dictionary 1025 (9th ed. 2009).

(quoting *Cabrales*, 524 U.S. at 6–7); *see also id.* at 144.  "To carry out that task, [a court] must 'initially identify the conduct constituting the offense,' and then 'discern the location of the commission of the criminal acts.'"  *Id.* at 138 (quoting *Rodriguez–Moreno*, 526 U.S. at 279).  The inquiry must focus on the "essential *conduct* element" of the crime, not simply on the "essential elements" of the crime, because venue is appropriate only where the criminal "physical *conduct*" occurred, not where the criminal intent was formed.  *Ramirez*, 420 F.3d at 144–46 (internal quotation omitted; emphases in *Ramirez*).  "[I]t is often helpful to look to the verbs of a statute in identifying the conduct that constitutes an offense, but the 'verb test' should not be applied 'to the exclusion of other relevant statutory language.'"  *Id.* (quoting *Rodriguez–Moreno*, 526 U.S. at 280).

II.    Facts

The Indictment alleges the following facts.  Until July 2009, Perlitz was a resident of Connecticut, after which he began residing in Colorado.  In 1991, Perlitz traveled to Haiti to volunteer, where he "claimed that he was inspired to begin a school in Haiti to help" poor, undernourished children (so–called "street children") with "limited access to education and housing," who often "live in foster homes where they do domestic work or . . . live on the street." (Indictment [Doc. # 47] at ¶¶ 1, 3, 4.)  In 1997, Perlitz "founded Project Pierre Toussant ('PPT'), a boys school in Cap–Haitien, Haiti, located on the North Coast of Haiti," which "began as an intake center" that employed both American volunteers and Haitians and which provided services—including "meals, sport activity, basic classroom instruction, and access to running water for baths"—to children as young as six.  (*Id.* at ¶ 5.)  According to the Indictment, "[b]y establishing

4

PPT, Perlitz had access to and authority and control over the street children in the program." (*Id.*)

In 1999, PPT expanded to include "a residential facility, Village Pierre Toussant" (the "Village"),

with which Perlitz "was directly involved." (*Id.* at ¶ 6.)  In 2007, PPT established another facility,

called the 14th Street facility, which "was a residential program for high–school age children who

Perlitz claimed needed extra attention," who "lived in a home" at the facility with "two house

parents," and who were all "individually chose[n]" by Perlitz.  The 14th Street facility "was a middle

to upper–middle class home that provided the children with tutors, special cooking arrangements,

high–end electronics, and other amenities." (*Id.* at ¶ 7.)  Finally, PPT "also included a house referred

to as 'Bel Air,'" a two–level house that was "Perlitz's primary residence in Haiti."  Only Perlitz "lived

on the lower floor[,] which had its own access to the outside.  Next to Perlitz's bedroom on the lower

floor was a small foyer–type room and a bathroom." (*Id.* at ¶ 8.)

In 1999, the Haiti Fund, Inc. "was incorporated as a charitable religious and educational

organization in Connecticut."  It was PPT's "fund–raising arm," and members of its Board of

Directors were selected "by a religious leader[] who had met and befriended Perlitz while Perlitz

attended college in Connecticut." (*Id.* at ¶ 9.)  "The Haiti Fund raised large sums of money" for PPT

"through fund raising efforts in Connecticut," and used that money to pay for all of PPT's expenses.

"The Haiti Fund maintained bank accounts only in Connecticut and Haiti." (*Id.* at ¶¶ 10, 11.)  The

Haiti Fund transferred over two million dollars "to Perlitz in Haiti" between 2002 and 2008; it also

directly paid for "significant capital expenses and other expenses incurred by Perlitz," paid Perlitz

a stipend, and provided Perlitz access to its Haitian bank account, from which "Perlitz regularly

obtained cash currency," some of which he used "to provide benefits to the minors." (*Id.* at ¶¶ 16,

17.)  The Haiti Fund was the main source of money to pay for PPT's costs incurred for equipment,

food, shelter, education, and salaries.  (*Id.* at ¶ 18.)

The Indictment alleges that "Perlitz traveled from the United States to Haiti for the purpose

of engaging in illicit sexual conduct with the minors who attended school at PPT," and he "traveled

from the United States to Haiti and engaged in illicit sexual conduct with the minors who attended

school at PPT."  (*Id.* at ¶¶ 12, 13.)  Specifically, the Indictment alleges as follows:

> Perlitz's travel to and from Haiti often originated from Connecticut.  The charges
> incurred for the travel to and from Haiti were paid for by the Haiti Fund or Board
> Members of the Haiti Fund because Perlitz traveled to PPT as an employee of the
> Haiti Fund.  Perlitz's travel to and from Haiti was on commercial airlines and the
> tickets were most often purchased utilizing a Connecticut travel agency.  The
> itinerary for the airline ticket for travel to Haiti usually included Perlitz's name in
> care of the religious leader . . . and a Connecticut address which was also the address
> of the religious leader[.] . . .  In 2008 and 2009, tickets for travel from the United
> States to Haiti were purchased by Perlitz on–line and in these instances, Perlitz
> self–reported that he was a Connecticut resident.  The expenses for the travel were
> at times charged to a credit card in the name of the same religious leader . . . who
> resided in Connecticut and had control over the Haiti Fund bank accounts.

(Indictment at ¶ 14.)

Between January 2001 and March 2008, Perlitz "traveled in foreign commerce from the

United States to Haiti" on 14 occasions "for the purpose of engaging in illicit sexual conduct . . . with

other persons under 18 years of age," and on 10 of those occasions, after he completed his "travel[]

in foreign commerce from the United States to Haiti" he "engaged in illicit sexual conduct . . . with

other persons under 18 years of age."  (Indictment at ¶¶ 39, 41; *see also id.* at ¶¶ 12, 13.)  The

Indictment identifies by initials nine boys—all of them "males under 18 years of age (also referred

to as 'minors') residing in the Republic of Haiti"—with whom Perlitz allegedly "engaged in illicit sexual conduct" after traveling to Haiti. (*Id.* at ¶¶ 2, 41.)

According to the Indictment, while in Haiti "Perlitz engaged in a variety of grooming practices to entice and persuade minors to engage in sex acts with him." (*Id.* at ¶ 20.) He "worked primarily at the Village where the children would board" (*id.* at ¶ 19), and he "befriended and recruited male street children to attend the school at PPT," promised them "food and shelter," and provided other tangible benefits such as "U.S. and foreign currency, cell phones, other electronics, shoes, clothes, and other items" (*id.* at ¶ 20). "As part of his grooming process, Perlitz would take a minor to a restaurant where he would provide the minor with food and alcohol and then encourage the minor to spend the night in his bedroom at Bel Air so that he could sexually abuse him." (*Id.* at ¶ 21.) He "showed one or more minors homosexual pornography or displayed homosexual pornography on his laptop computer." (*Id.* at ¶ 22.) "When minors stayed with Perlitz at Bel Air, he at times instructed them to sleep in his room where he engaged in, or attempted to engage in, sex acts with minors." (*Id.* at ¶ 23.) "During or after the sex acts with the minors, Perlitz would often tell them not to be ashamed or would state to them that he was 'crazy.'" (*Id.* at ¶ 24.) He also "would at times withhold benefits or threaten to expel . . . from the program" minors who "refused to engage in sex acts." (*Id.* at ¶ 25.) He offered those minors who engaged in sex acts with him substantial tangible and intangible benefits, and withheld benefits from those who refused: he denied some minors bed sheets, but offered others "cash, clothing, electronics and other items"; those who engaged in sex acts understood that they could act with impunity, while those who

refused "understood that they could be treated poorly and even expelled from PPT and forced to return to a life on the street." (*Id.* at ¶¶ 26, 27.) Perlitz "reprimanded minors who he perceived had become disloyal," and "manipulated minors who he sexually abused" to recruit additional minors and to control those he feared would become disloyal. (*Id.* at ¶ 28.)

Perlitz also "attempted to conceal and concealed the acts of sexual abuse from the staff at PPT and the Board of Directors of the Haiti Fund." (Indictment at ¶ 29.) He concealed from the Haiti Fund's directors and donors "that he would utilize some of the money provided to him for PPT to entice and persuade minors to engage in sex acts with him" (*id.* at ¶ 31), and "[i]n an effort to conceal his conduct, Perlitz discouraged other American volunteers from working at the Village" (*id.* at ¶ 19). When questioned Perlitz "would say that it was common in Haiti for children and adults to sleep together or that the particular minor was having a lot of difficulty." (*Id.* at ¶ 30.) He kept close control over PPT to obtain continued funding, to "prevent American volunteers from discovering or questioning his abuse of minors," and to threaten Haitian staff with unemployment to "prevent [them] from coming forward about the allegations of sexual abuse." (*Id.* at ¶¶ 31–36; *see also id.* at ¶ 37.)

III.    Discussion

A.    Essential Conduct Elements

In this case, the Government charges Perlitz with having violated subsections (b) and (c) of 18 U.S.C. § 2423, which provide in pertinent part:

> (b) Travel with intent to engage in illicit sexual conduct.—. . . a United States citizen or an alien admitted for permanent residence in the United States who travels

in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

(c) Engaging in illicit sexual conduct in foreign places.—Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423 (2006 ed. and Supp. III).[3]  As in *Ramirez*, "[h]ere, the verbs of the statute exhaustively identify the conduct constituting the offense[s]," 420 F.3d at 140, in this case "*travels* in foreign commerce" and "*engages* in any illicit sexual conduct."

1.      Traveling In Foreign Commerce is an Essential Conduct Element

These provisions make clear that "travel[ing] in foreign commerce" is an "essential conduct element" under both § 2423(b) and § 2423(c).  Following the statutes' plain text, courts construing both § 2423(b) and § 2423(c) have concluded, as this Court concludes, that these provisions proscribe the criminal conduct of "travel[ing] in foreign commerce."  *See United States v. Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006) ("The elements that the government must prove under § 2423(c) . . . are straightforward.  First, the defendant must 'travel[] in foreign commerce.'  18 U.S.C. § 2423(c).  Second, the defendant must 'engage[] in any illicit sexual conduct with another person,' *id.*"); *United States v. Bredimus*, 352 F.3d 200, 208, 210 (5th Cir. 2003) ("Section 2423(b) . . . requires as an element that the offender actually travel in foreign commerce. . . . We find . . . that the criminal act

_____

[3] Congress enacted both of these provisions as part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. 108–21, § 105, 117 Stat. 650, 653–54 ("Penalties Against Sex Tourism").  The PROTECT Act enacted § 2423(c) for the first time and replaced a previous version of § 2423(b) that was substantially similar but had provided a lesser penalty.

under § 2423(b) is foreign travel with criminal intent; and thus, the offense is complete even if the illicit intent is never realized." (following *United States v. Hersh*, 297 F.3d 1233, 1245–46 (11th Cir. 2002))).[4]

> 2.   Formation of Intent is Not an Essential Conduct Element Under § 2423(b)

The Government argues that "at least with respect to the violations of 18 U.S.C. § 2423(b), [it] is required to prove, as an essential conduct element, a specific intent," and asserts that it "has charged and intends to prove that Perlitz formed and maintained this intent in 'Connecticut, Haiti and elsewhere.'" (Gov't's Suppl. Opp'n [Doc. # 54] at 42 (quoting Indictment at ¶¶ 39, 41).)  This argument—that a defendant's formation of intent can be an "essential conduct element" for venue purposes—is foreclosed by *Ramirez*, which holds that formation of intent is not physical conduct. The defendant in *Ramirez* had been charged with, among other things, mail fraud, which required the Government to "'prove three elements: (1) a scheme to defraud victims of (2) money or property, though the (3) use of the mails.'"  *Ramirez*, 420 F.3d at 144 (quoting *United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999)).  The Second Circuit rejected the Government's contention that the defendant's devising of a "scheme to defraud" constituted an essential conduct element.  Instead, it held that the devise–a–scheme–to–defraud element, which "'focuses on the intent to harm,' . . . is the *mens rea* element of mail fraud," and "'is not itself conduct at all'"; to the contrary, the court observed, "the plain meaning of the word 'devise' . . . connotes contemplation,

---

[4] A separate portion of § 2423(b) criminalizes "travel[ing] in *interstate commerce* or travel[ing] *into the United States*," but Perlitz was not charged with traveling in interstate commerce, only with traveling in foreign commerce.

10

*not action*," *id.* at 144 (emphasis added), and because "[o]ne might easily devise a scheme to defraud entirely in one's head and not engage in any act proscribed by the statute until 'plac[ing]' an item into the mail," devising the scheme was therefore "an essential element, [but] . . . not an essential *conduct* element for purposes of establishing venue," *id.* at 144–45 (quotations omitted; emphasis in original).  Similarly, Perlitz's alleged formation of intent to "engage[] in illicit sexual conduct" may be an essential element of the crime proscribed by § 2423(b).  *See, e.g.*, *Bredimus*, 352 F.3d at 210; *Hersh*, 297 F.3d at 1245–46.  But here, as in *Ramirez*, the fact that formation of intent is an essential element does not make it an "essential *conduct* element" or the "physical '*conduct* constituting the offense.'"  *Ramirez*, 420 F.3d at 144; *see also Clark*, 435 F.3d at 1116 ("Under § 2423(b), the crime is contained solely within the 'travels in foreign commerce' provision of the statute," even though the statute also "requires that the foreign travel be with the specific intent to engage in illicit sex").[5]  In sum, Perlitz's alleged formation of intent to engage in illicit sexual conduct is not an essential conduct element of the crime defined by § 2423(b), and the location where he formed that intent is therefore immaterial to a determination of whether venue lies here.

---

[5] Adherence to the Second Circuit's decision in *Ramirez* requires this Court to reject the reasoning in *United States v. Armstrong*, No. EP–07–CR–2276–DB, 2007 WL 3171775 (W.D. Tex. Oct. 26, 2007), which stated that "[p]ursuant to [§ 2423(b)], an essential conduct element is formation of intent," *id.* at *2.

3.    The Essential Conduct Element under § 2423(c) of Engaging in Illicit Sexual Conduct Takes Place Outside the United States

It is both clear from the statutory text and undisputed by the parties that "engag[ing] in any illicit sexual conduct" is an essential conduct element under § 2423(c).  (*See* Gov't's Suppl. Opp'n at 40; Def.'s Suppl. Mem. Supp. [Doc. # 61] at 4.)[6]  It is also clear from the statutory provision (captioned "[e]ngaging in illicit sexual conduct in foreign places") and the allegations raised against Perlitz that the conduct described in this element is conduct that took place abroad—that is, following Perlitz's travel abroad in foreign commerce—and therefore not within any judicial

––––––––––––––––

[6] Perlitz suggests that "illicit sexual conduct" might be read as the *only* essential conduct element under § 2423(c), arguing that "[f]oreign travel is a necessary element of a Section 2423(c) violation, but it is more a jurisdictional 'hook' than an actual criminal conduct element, since under the terms of the statute the foreign travel need not be undertake[n] with bad intent, and can precede the alleged unlawful sexual activity by many years."  (Def.'s Suppl. Mem. Supp. at 4.)  But Perlitz agrees that "travel in foreign commerce" is the essential conduct element of a § 2423(b) violation (*see id.*), and he does not explain why the identical statutory text in both provisions should be read differently—in one case, as providing an essential conduct element, and in the other, as providing only "a jurisdictional 'hook'"—or why a statute's "jurisdictional 'hook'" cannot *also* be essential criminal conduct.  *Cf., e.g.*, *United States v. Needham*, 604 F.3d 673, 681 (2d Cir. 2010) (federal jurisdiction over Hobbs Act prosecution exists only if crime has "effect on interstate commerce," and that jurisdiction is shown "'by *conduct* that affects commerce in any way or degree'" (quoting, in parenthetical, *United States v. Jamison*, 299 F.3d 114, 118 (2d Cir. 2002; emphasis added)).  Looking to all of the "relevant statutory language," *Ramirez*, 420 F.3d at 144, the Court is not persuaded that "travel in foreign commerce" is only a "jurisdictional hook" and not also an essential conduct element under § 2423(c).  (*See also* Def.'s Mem. Supp. [Doc. # 24] at 8 ("an essential element under both Sections 2423(b) and (c) is 'travel in foreign commerce.'").)

Section 2423(c) thus contains two conduct elements—"travel[] in foreign commerce" and "illicit sexual conduct"—and *both* are "essential conduct elements" for purposes of determining where venue is proper.  The Supreme Court has made clear that a crime may have multiple essential conduct elements.  *See Rodriguez–Moreno*, 526 U.S. at 281 ("where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done" (internal quotation omitted)).

"district" within the United States.[7]  The statute defines "illicit sexual conduct" to mean either a "sexual act" with a minor involving direct contact with either person's genitals, or any "commercial sex act" (that is, "any sex act, on account of which anything of value is given to or received by any person") with a minor.  *See* 18 U.S.C. §§ 2423(f), 2246(2), 1591(e)(3).  Perlitz is alleged to have engaged in illicit sexual conduct with minors only in Haiti.  (*See* Indictment at ¶ 41.)

i.  Commercial Sex Acts

Pointing to the allegations that Perlitz "provided monetary and other benefits" to minors "[i]n order to entice and persuade minors to comply with sex acts" with him and that he gave to minors who engaged in sex acts with him food, shelter, and alcohol as well as "cash, clothing, shoes, electronics, and other items" (*see, e.g.*, Indictment at ¶¶ 20, 21, 26), the Government argues that Perlitz engaged, specifically, in commercial sex acts, and that venue is proper in Connecticut because he spent funds "from the Connecticut–based Haiti Fund," some of which were "wired or otherwise transferred from the District of Connecticut to Haiti," to pay for the items he used "in support of commercial sex acts" and "to access the children and to abuse them."  (Gov't's Suppl. Opp'n at 40–41.)  These facts, however, do not show that venue lies in Connecticut on the basis of Perlitz's sex acts.  The statute prohibits "illicit sexual conduct," which includes "any *sex act, on account of which* anything of value is given to or received by any person."  18 U.S.C. §§ 2423(f), 1591(e)(3) (emphasis added).  The Indictment charges Perlitz with having performed "sex act[s]" in Haiti, and

---

[7] "The term[s] 'district' and 'judicial district'" refer to the 94 districts located in the 50 United States, the District of Columbia, and Puerto Rico.  *See* 28 U.S.C. §§ 451, 81–131.

with having "given," while in Haiti, "[some]thing of value" to the children in Haiti.  For venue

purposes, it is immaterial where Perlitz obtained, saved, or managed the money that he converted

to the "[]thing[s] of value" that he gave to the children, since the statute does not prohibit obtaining,

saving, or managing money, but instead prohibits "sex act[s]" and "*giv*[*ing*]" things of value "on

account of" those sex acts.  The Indictment clearly alleges that Perlitz did both of these acts only in

Haiti.

ii.      Crimes Outside the Jurisdiction of any State or District

Congress contemplated the possibility of criminalizing conduct that takes place outside the

United States, and enacted a venue statute covering such circumstances.[8]  Under that statute, "[t]he

trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of

any particular State or district, shall be in the district in which the offender . . . is arrested or is first

brought; but if such offender [is] . . . not so arrested or brought into any district, an indictment or

information may be filed in the district of the last known residence of the offender . . . or if no such

residence is known the indictment or information may be filed in the District of Columbia."  18

U.S.C. § 3238.  If the only essential conduct element of a crime under § 2423(c) were engagement

in illicit sexual conduct, then the venue provision of § 3238 might apply to permit prosecution of

Perlitz where he was first arrested or first brought, or his last known residence.  But § 3238 is

---

[8] *See also* U.S. Const. art. III, § 2, cl. 3 ("when [a crime is] not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed").

14

inapplicable here[9] because travel in foreign commerce is also an essential conduct element under § 2423(c), and such travel can take place in a district of the United States, and in this case is alleged to have taken place in districts of the United States: Perlitz "traveled in foreign commerce *from the United States* to Haiti" by means of "commercial airlines." (Indictment at ¶¶ 14, 39, 41; *see also id.* at ¶¶ 12, 13.) Because Perlitz is alleged to have engaged in an essential conduct element within the jurisdiction of districts of the United States, § 3238, which by its terms governs only crimes "committed . . . elsewhere out of the jurisdiction of any particular State or district," is inapplicable. *See also Ramirez*, 420 F.3d at 140 ("venue would be proper if *any of* the[] 'essential conduct elements' occur[] in" the district).[10]

---

[9] The Government agrees that § 3238 is not applicable to this case. (*See* Gov't's Suppl. Opp'n at 31, 33.) Perlitz had agreed with the Government at oral argument, but following return of the Second Superseding Indictment, he now argues both that "the logic of the *Armstrong* and *Pendleton* cases is persuasive" that § 3238 applies here; and that venue does not lie in Connecticut with or without application of § 3238. (Defs.' Suppl. Mem. Supp. at 11–12.)

To date two other district courts have addressed the question of where venue lies for prosecutions under § 2423(c), and both have held that § 3238 governs the venue analysis because the criminal conduct proscribed by § 2423(c) is sexual conduct abroad—that is, conduct outside "the jurisdiction of any particular State or district." *See Armstrong*, 2007 WL 3171775, at *3–*4 (holding that under § 2423(c) travel in foreign commerce is "an essential conduct element" and yet also "a mere preparatory act"); *accord United States v. Pendleton*, Crim. No. 08–111–GMS, 2010 WL 427230, *6 (D. Del. Feb. 2, 2010) ("agree[ing] with *Armstrong*'s analysis"). Essential to these courts' application of § 3238 were their conclusions that § 2423(c) does not describe any essential conduct elements that could take place in the United States, that is, within the jurisdiction of a judicial district. Because, however, "travel in foreign commerce" is clearly an essential conduct element of a crime under § 2423(c), and in this case that travel is alleged to have taken place, in part, within the jurisdiction of United States judicial districts, *Pendleton* and *Armstrong* are unpersuasive and this Court rejects their analyses. (*See also supra* note 5 and accompanying text.)

[10] At oral argument the Government and Perlitz agreed that if § 3238 were to apply here, it would support venue in the District of Colorado, but not the District of Connecticut. When arrested, Perlitz was a resident of Colorado (*see* Indictment at ¶ 1), and he was first arrested in and

B.       Conduct Preparatory to the Offense

The Government contends that Perlitz's actions while in Connecticut are part of his travel in foreign commerce.  It relies on the Indictment's allegations that "Perlitz's travel to and from Haiti often originated from Connecticut"; that while he was in Connecticut as a Connecticut resident he booked his travel listing a Connecticut address, using a Connecticut travel agency, and paying with funds raised and maintained in Connecticut by the Connecticut–based Haiti Fund; and that Perlitz obtained funds in Haiti that had been transferred from Connecticut.  (*See* Indictment at ¶¶ 1, 9–11, 14, 16–18; Gov't's Suppl. Opp'n at 23–25, 27–31.)  The Government asserts that "[f]or many of Perlitz's trips from the United States to Haiti, he flew from John F. Kennedy ('JFK') airport in New York to Haiti," and that its "evidence will also include documents showing Perlitz's use of car services from Connecticut to his departing flights from New York."  (Gov't's Suppl. Opp'n at 27.) Perlitz counters that because "[t]he core domestic conduct under both statutes is foreign travel, neither fund–raising, transfer of money, nor conduct allegedly motivated by a desire to preserve secrecy can be deemed an essential element of a Section 2423(b) or (c) violation" (Def.'s Mem. Supp. [Doc. # 24] at 14), and instead that "all the conduct cited by the [G]overnment is at most preparatory to, and not part of, the act of traveling in foreign commerce" (Def.'s Suppl. Mem. Supp. at 6).

_____

brought to the District of Colorado, *see* Commitment to Another District, *United States v. Perlitz*, No. 1:09–mj–1162–BNB (D. Colo. Sept. 18, 2009).

"'[V]enue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense.'" *Ramirez*, 420 F.3d at 141 (quoting *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989).  An act is "'preparatory to the offense'" rather than "'part of the offense'" if it occurs prior to the criminal offense conduct or "'preceded the inception of the offense.'"  *Id.* (quoting same).  By definition, a "preparatory" act is an act that precedes, and is not, an essential conduct element.  *See id.*

The Government argues that the pre–foreign–travel actions that Perlitz took while in Connecticut support venue in this District because under 18 U.S.C. § 3237(a), "[a]ny offense involving . . . transportation in . . . foreign commerce" is a "continuing offense[]" and "may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves" or "any district in which such offense was begun, continued, or completed."  But even if the crimes charged are continuing crimes and § 3237(a) applies, that does not establish venue in a district where only preparatory acts—even those closely related to, but preceding, a crime's "essential conduct element[s]"—occurred.  Application of § 3237(a) is still subject to the Constitution's venue requirement.  As the Second Circuit has explained, while § 3237(a) "codified the rule that continuing offenses may be prosecuted wherever a proscribed act occurs," *Ramirez*, 420 F.3d at 139 & n.4, its enactment "could not and did not alter the constitutional and policy concerns underlying the [Supreme] Court's restrained view of venue," *United States v. Brennan*, 183 F.3d 139, 147 (2d Cir. 1999).  Moreover, § 3237(a) "'contains no retrospective provision establishing venue in a district in which the defendant performed only acts that preceded the inception of the offense.'"  *Ramirez*, 420

F.3d at 141 (quoting *Beech–Nut*, 871 F.2d at 1190) (noting that because § 3237(a) "'traces an offense from inception to completion, its thrust is entirely forward–looking'").  In short, when alleged crimes are treated as continuing offenses, § 3237(a) does not legitimate venue in a district where the Constitution would otherwise not permit it.  Regardless, then, of whether Perlitz is charged with crimes that are "continuing offenses," the Constitution still requires that the Government allege that Perlitz engaged in essential criminal conduct in this District in order to permit of prosecution of Perlitz here.[11]

The Government posits that Perlitz has "offer[ed] no support for the theory that in a travel case, venue must necessarily be narrowly and exclusively limited to the District where the defendant's flight took off," and that "the weight of authority regarding venue in travel–related cases is to the contrary."  (Gov't's Opp'n [Doc. # 28] at 53–54; *see also* Gov't's Suppl. Opp'n at 29–30.) Every case on which the Government relies involves criminal interstate travel, not travel in foreign commerce.[12]  This distinction is critical to the venue inquiry.  During interstate travel, the travel

---

[11] Section 3237(a)'s text simply permits venue where Perlitz's criminal conduct "was begun, continued, or completed."  Within this Circuit, when the Government prosecutes a person for a continuing offense, venue lies only where there has been essential criminal conduct in the district *and* the criminal acts have substantial contacts with that district.  *See United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008); *Ramirez*, 420 F.3d at 139.  (*See also* Gov't's Suppl. Opp'n at 42 (asserting that substantial–contacts test applies in cases "where . . . venue properly lies").)  The constitutional minimum venue requirement is for essential conduct elements to have occurred in the district; absent that constitutional threshold, the substantial–contacts test is irrelevant.  In arguing for application of the substantial–contacts test, and pointing to Perlitz's and others' conduct and the Haiti Fund's location in Connecticut, the Government again conflates conduct *relating to and preceding* a crime with conduct that is *essential to* a crime.

[12] *See United States v. Bennett*, 258 F. App'x 671, 674–77 (5th Cir. 2007) (travel from Washington State, through various parts of Texas, Oklahoma, California, Nevada, Arizona, Oregon,

takes place between judicial districts of different States, and so when interstate travel is the essential criminal conduct it occurs in *every district* through which the defendant travels.  Therefore, both definitionally and by necessity interstate travel implicates multiple districts; travel in foreign commerce does not, since a defendant who is charged with travel in foreign commerce may begin his or her international travel without ever having traveled from one district to another.  Thus, for travel–in–foreign–commerce prosecutions under § 2423(b) and (c), venue could be limited to just the district from which the defendant left the United States for his or her foreign destination.

Finally, the Government argues that Perlitz's Connecticut–based activity—including fundraising, ground transportation, and travel–booking—are "essential to the travel [in foreign commerce] and not merely preparatory."  (Gov't's Suppl. Opp'n at 28; *see also id.* at 26).  The strongest component of this argument is that Perlitz's domestic, interstate travel from Connecticut to JFK Airport, which is located in the Eastern District of New York and from which five of Perlitz's alleged 14 flights to Haiti originated,[13] is part of, not merely preparatory to, his travel in foreign

and, "finally," back to California); *United States v. Williams*, 291 F.2d 1180, 1189 (9th Cir. 2002) (travel from Montana, through Texas, Arizona, and Washington, D.C., and to California), *overruled on other grounds*, *United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007); *United States v. Rink*, 778 F.2d 581, 585 (10th Cir. 1985) (from Kansas to Florida); *United States v. Pepe*, 747 F.2d 632, 643, 660 n.44 (11th Cir. 1984) (from Florida to New York); *United States v. Blitstein*, 626 F.2d 774, 776, 782–83 (10th Cir. 1980) (from Colorado to California); *United States v. Polizzi*, 500 F.2d 856, 899–900 (9th Cir. 1974) (through Nevada, Michigan, and California).  (*See also supra* note 4.)

[13] The Indictment alleges 14 distinct dates of travel (Indictment at ¶¶ 39, 41), and the Government represents that on five of those dates Perlitz flew to Haiti from JFK.  On the nine other dates, it asserts, "Perlitz's *initial flight* appears to have departed from such locations as: Miami, Denver, San Francisco and Detroit" (Gov't's Suppl. Opp'n at 31 n.8 (emphasis added)).  Soon after Perlitz was arrested in Colorado, the Government moved for pretrial detention of him, and attached to its motion Perlitz's travel records as compiled by the Department of Homeland Security.  (*See*

commerce.  This argument is, however, unavailing because Perlitz did not commit either charged crime by driving to New York.

*Ramirez* reiterates the constitutional principle that "venue is proper only where a crime is 'committed,'" which "precludes considering preparatory acts in determining the *locus delicti.*"  420 F.3d at 141–42.  In *Ramirez*, the government prosecuted Silverio Ramirez and Angelica Vitug in the Southern District of New York (covering Manhattan) for visa fraud and making false statements, and conspiracy to commit those offenses, "stemming from their efforts to obtain fraudulent visas" for Ramirez's clients.  As part of these efforts, "Vitug falsely represented to the Immigration and Naturalization Service ('INS') and the United States Department of Labor ('U.S. DOL') that Ramirez's clients would have jobs" in her endocrinology practice, but these jobs "did not exist."  In New Jersey, the defendants devised a scheme to obtain "two kinds of work visas" including the H–1B visa, for which applicants needed "both 'highly specialized knowledge' of a particular occupation and a promise of employment from an American employer," who must petition the INS for the visa on the employee–applicant's behalf.  The employer must first submit to U.S. DOL a Labor Condition Application ("LCA") and obtain U.S. DOL's approval of its LCA.  It then must attach a copy of the approved LCA to a Form I–129 Petition and submit the package to the INS.  In New Jersey, Vitug prepared and signed false LCAs, in each of which she falsely certified that her

---

Gov't's Mem. Supp. Mot. Detain & Exs. 2–3 [Doc. # 4].)  These documents reflect that Perlitz flew to Haiti from a number of airports including JFK, Miami, and Fort Lauderdale, but contain no record of any flight Perlitz took to or from Connecticut.  (*Id.*)

The Court notes that "'venue must be proper with respect to each count.'"  *Ramirez*, 420 F.3d at 140 (quoting *Beech–Nut*, 871 F.2d at 1188).

employer, BMG, would hire certain of Ramirez's clients.  She submitted these LCAs to the U.S. DOL office in Manhattan for approval.  The LCAs were approved by the Manhattan office of the U.S. DOL, which then sent them back to Vitug in New Jersey.  Vitug then attached them to the I–129 Petitions, which she submitted to the INS in Vermont.  *Id.* at 136–38.

For the H–1B visa scheme the government charged Vitug with visa fraud under 18 U.S.C. § 1546(a), under which the essential conduct elements were "the making of, or subscribing to, false statements under oath, as well as the presentation of documents containing such statements." *Id.* at 140.  Vitug challenged the venue of her trial, arguing that she did none of these things in the Southern District of New York.  The government argued that because Vitug had submitted the false LCAs to the U.S. DOL in Manhattan and later appended the approved LCAs to her I–129 Petitions, venue could lie in the Southern District.  The Second Circuit rejected the government's argument. It noted that "Vitug was charged . . . with 'knowingly presenting' a fraudulent 'Form I–129 Petition . . . and attachments' to the Vermont INS," but "was not charged with committing visa fraud by filing false LCA forms with the Manhattan branch of the U.S. DOL," which was "a separate event that occurred prior to that offense and in preparation for it." *Id.* at 140–41.  Specifically, the court held:

> The government argues that because filing and receiving approval for a LCA form was a 'condition precedent' to the submission of her Form I–129 Petition package, it was part of the unlawful presentation of the Form I–129 package in Vermont.  The government's word choice underscores the weakness of its theory.  Since the filing of the LCA forms preceded and was in preparation for the offense, it, consequently, was not part of the offense. . . .

Vitug's act of presenting the LCA form to the U.S. DOL in Manhattan occurred before the charged offense had even "begun." 18 U.S.C. § 3237(a). Since venue is proper only where a crime is "committed," and *Beech–Nut* precludes considering preparatory acts in determining the *locus delicti*, we vacate [Vitug's] conviction for [the visa–fraud counts].

*Id.* at 141.

As reflected in *Ramirez*, the Second Circuit set forth this distinction between acts in preparation for the offense and essential conduct elements of the offense in *United States v. Beech–Nut*, 871 F.2d 1181 (2d Cir. 1989). In that case, the government prosecuted the defendants in the Eastern District of New York for "'[t]he introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded,'" and proved that they sold adulterated apple juice. *Beech–Nut*, 871 F.2d at 1189 (quoting the Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(a)). But the defendants' only connection to the Eastern District was that they "(1) telephoned the brokers to place orders for the adulterated apple juice concentrate, and (2) mailed confirmations for these concentrate orders into the Eastern District," which the Second Circuit held did not support venue. Following the principle that a "'court must decide when the defendant's actions have progressed to the point where a court can confidently conclude that the offense in question has been committed,'" *id.* (quoting, in parenthetical, *United States v. Chestnut*, 533 F.2d 40, 47 (2d Cir. 1976); alterations omitted), the court in *Beech–Nut* held that "these communications were not *part of the offense* of introducing the offending juice into commerce but were merely *prior and preparatory to that offense*. Whether the crime be continuing or noncontinuing, venue is not

proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense," *id.* (emphases added).

 *Ramirez* and *Beech–Nut* make clear that even if an act is a closely related and necessary "condition precedent" to commission of a crime, that act is merely preparatory to the crime if it occurs prior to, and is not part of, the crime's essential conduct elements.  In *Ramirez*, for example, in order to submit the false I–129 Petitions to the INS office in Vermont, Vitug first was required to submit the false LCAs to, and receive approval from, the U.S. DOL office in Manhattan. Nonetheless, the Court of Appeals held that her submission of LCAs to the U.S. DOL was merely preparatory, because she was charged with submitting false I–129 Petitions to the INS (in Vermont), and not with submitting false LCAs to the U.S. DOL (in Manhattan).  *Ramirez*, 420 F.3d at 140–41. Similarly, in *Beech–Nut*, although the defendants could not introduce the adulterated apple juice into commerce unless they obtained the concentrate, which they did through orders placed in the Eastern District of New York, these acts were held to be merely preparatory because at the time they were taken the defendants had not yet committed the essential conduct element, that is, they had not yet "introduc[ed]" the adulterated juice into interstate commerce.  *See also United States v. Strain*, 396 F.3d 689, 697 (5th Cir. 2005) (vacating conviction, after trial in Texas, of defendant charged with "harbor[ing] or conceal[ing]" a fugitive, 18 U.S.C. § 1071, where defendant had placed a phone call to the fugitive and urged him to turn himself in, then traveled through and out of Texas to meet him in New Mexico, where she rented them a room and lied to police about his whereabouts, because her Texas–based phone call and travel, "although *indispensable to the ultimate*

*act of harboring in New Mexico*, were preparatory acts for the commission of the actual crime—much like purchasing a gun and traveling to a bank to commit a robbery—and thus insufficient to support a finding of venue").

The Government's argument is that Perlitz's Connecticut–based activities were not merely preparatory because "Perlitz's travel to Haiti would not have happened *but for* his employment and travel expenses being financed by the Connecticut–based Haiti Fund and Connecticut benefactors" and his having taken a car from Connecticut to the airport in New York. (Gov't's Suppl. Opp'n at 26–28 (emphasis added).) This argument fails to differentiate the "essential conduct elements" of a crime, which would support venue, from acts a defendant must engage in in order to be in a position to commit the crime, which are preparatory and cannot support venue.

In this case, Perlitz is criminally charged only with travel in *foreign commerce*, and not travel in interstate commerce. Like the juice–concentrate orders placed in the Eastern District of New York in *Beech–Nut* and the LCA forms sent to the Southern District of New York in *Ramirez*, Perlitz's activities in Connecticut—maintaining a residence, obtaining funding, booking travel, and traveling in interstate commerce out of Connecticut to his points of departure into foreign commerce—all precede, and are not part of, his "travel[] in foreign commerce" or "engage[ment] in illicit sexual conduct." These are merely preparatory acts and do not support venue in the District of Connecticut.

IV.     Summary and Conclusion

The Indictment does not allege that Perlitz engaged in any "travel[] in foreign commerce" or "illicit sexual conduct," 18 U.S.C. § 2423(b), (c), in Connecticut.  Its allegations specify only that when he traveled in foreign commerce, he did so "from the United States to Haiti."   The Government's arguments conflate Perlitz's having *prepared for criminal conduct* in Connecticut, which may well be shown by the facts alleged, with his having *engaged in essential criminal conduct* in Connecticut.  To withstand a pretrial challenge to venue the Government must show the latter, but the Indictment shows only the former: it alleges no essential criminal conduct on Perlitz's part that took place in Connecticut.  Because Perlitz is not alleged to have "travel[ed] in foreign commerce" or "engag[ed] in any illicit sexual conduct" while in Connecticut, the Constitution and Rule 18 of the Federal Rules of Criminal Procedure prohibit the Government from prosecuting him for those crimes in the District of Connecticut.

For these reasons, Defendant's Motion to Dismiss [Doc. # 23] is GRANTED.

IT IS SO ORDERED.

              /s/
                              
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of July, 2010.

25